UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MIKE THURMON, et al., | |
| Plaintiffs, | CIVIL ACTION NO. |
| v. | 1:11-CV-01407-CAP |
| A.W. CHESTERTON, INC., et al., | |
| Defendants. | |

# O R D E R

This case was originally transferred from the United States District Court for the Northern District of Georgia to the United States District Court for the Eastern District of Pennsylvania as part of Multidistrict Litigation Docket 875, *In re: Asbestos Products Liability Litigation. See Thurmon v. Georgia Pacific, LLC,* No. 11-CV-01407-ER (E.D. Pa. 2012). The transferee court in the Eastern District of Pennsylvania remanded the case to this court for the resolution of the final pre-trial matter in the case, which is Crane Corporation's ("Crane") re-filed motion for summary judgment as to claims arising from alleged asbestos exposure occurring in connection with Crane valves [Doc. No. 75].[1]

---

[1] Although this motion was addressed by the transferee court, the parties were given leave to refile their summary judgment motions as they pertain to

I.     Factual Background

The plaintiffs are the survivors of William H. Thurmon (the "decedent"), who was diagnosed with mesothelioma in December 2009 and died that same month. As a result of his thirty-one-year service as a shift superintendent at Rayonier Pulp and Paper Mill ("Rayonier") in Jesup, Georgia, the plaintiffs contend that the decedent was exposed to asbestos from valves, gaskets, and packing manufactured or supplied (or both) by Crane.[2]

In support of their claim, the plaintiffs offer the testimony of Ellis Shannon Copeland and Bobby Trull, both of whom worked with the decedent at Rayonier. Copeland's testimony establishes that there were asbestos-containing Crane valves at Rayonier and that such valves were used in the "production" and "digester" areas of the facility. Trull offers testimony that suggests that the contents of Crane valves—i.e., gaskets and packing—were regularly replaced due to normal wear and tear. According to the plaintiffs' evidence, the manipulation and replacement of the gaskets and packing

---

Georgia's interpretation of the "bare metal defense." The transferee court remanded the case exclusively for the resolution of that question.

[2] This motion is limited to the decedent's alleged contact with Crane valves. The transferee court resolved all of the plaintiffs' theories alleging asbestos exposure from Crane gaskets and packing and left only the plaintiffs' contention that exposure to asbestos was caused by Crane's valves [Doc. No. 66 at 12].

presented a health hazard because asbestos fibers were freed in the process. Trull testified that the decedent "could have been" in close proximity to that work "if [the work] was [performed] in his area and he was working that day or was the superintendent . . . ." When the plaintiffs' counsel sought to clarify this testimony, Trull stated that he had "memory" of the decedent's presence during such maintenances.

Critically, however, Trull testified that he did not know whether parts manufactured, supplied, or designed by Crane were used to replace the parts removed from its valves; he claims "[they] could have used some other brand." Trull's testimony that he did not know whether any of the replacement packing or gaskets were original to the valve is not disputed by the parties [Doc. No. 79 at 3].

For the purposes of this motion, the court presumes that all of Crane's valves were originally manufactured with asbestos-containing packing and gasket materials despite their capacity to operate with non-asbestos-containing components [Doc. No. 79 at 3-4]. Notwithstanding this favorable presumption, the court agrees with the transferee court that "there is no evidence that the valves (and/or the asbestos-containing component parts therein) to which Decedent would have been exposed on . . . unspecified 'occasions' were new (i.e., original)" [Doc. No. 66 at 11]. In the absence of this

3

evidence, as noted above, the transferee court remanded the case to this court to decide whether "Georgia law holds a valve manufacturer liable for injury arising from asbestos-containing component parts used in connection with its valve, but which it did not manufacture or supply [or design]"; in other words, "[Crane can] only be liable for this exposure if Georgia law does not recognize the so-called 'bare metal defense'" [Doc. No. 66 at 11].

II.  Discussion

   A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure authorizes a court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court— that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light

most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The applicable substantive law will identify those facts that are material. *Id.* at 247. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.* Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* In order for factual issues to be "genuine" they must have a real basis in the record. *Matsushita Industrial Co.*, 475 U.S. at 586. When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.*

### B. Analysis

As established by the transferee court, the parties agree that Georgia substantive law applies [Doc. No. 66 at 2]. Moreover, since this case appears before the court on remand from an order of a Multidistrict Litigation transferee judge, the court will assign weighty deference to the transferee court's earlier decisions and refrain from deviating from them "because any widespread overturning of transferee court decisions would frustrate the principle aims of the MDL process and lessen the system's effectiveness." *Hill v. Ford Motor Co.*, No. 1:11-CV-00799-JEC, at *15 (N.D. Ga. 2013) (quoting *In re Ford Motor Co.*, 491 F.3d 406, 411 (5th Cir. 2009)). The court will thus limit its review to determining whether Georgia law recognizes the bare metal defense.[3]

#### 1. The Plaintiffs' Arguments

The plaintiffs argue that Georgia appellate courts do not recognize the bare metal defense and that Crane is seeking to inappropriately expand Georgia's recognized "post-sale alteration" and "product misuse" defenses. For a number of interrelated reasons, the plaintiffs maintain that Crane is

---

[3] This question arises in connection with Crane's theory in support of its motion for summary judgment, particularly that it has no duty under Georgia law "to warn about, and is not liable for, asbestos-containing products it did not manufacture, supply, or design" [Doc. No. 75-1 at 1].

subject to liability on its negligent design and negligent failure to warn claims. Fundamentally, the plaintiffs contend that Crane breached its duty as a "manufacturer" under Georgia law by placing its valves in the stream of commerce with known, foreseeable latent defects.

### 2. Bare Metal Defense and Proximate Causation

"The clear thrust of the bare metal defense is that a manufacturer cannot be held liable for asbestos-containing products used in conjunction with its bare metal [product], absent evidence that the manufacturer was part of the chain of distribution for those products." *Morgan v. Bill Vann Co., Inc.*, 969 F. Supp. 2d 1358, 1369 (S.D. Ala. 2013). In other words, the bare metal defense stands for the proposition that a manufacturer is "not liable for injuries caused by asbestos products, such as insulation, gaskets, and packing, that were incorporated into their products or used as replacement parts, but which they did not manufacture or distribute." *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 701, 793 (E.D. Pa. 2012). In effect, the bare metal defense is a challenge to the duty and causation components of a plaintiff's negligence action. *Id.* at 793 n.2. Because no controlling authority in Georgia has unequivocally recognized the bare metal defense, the court is tasked with resolving this substantive question of state law in a manner it appears the

state's highest court would. *Clark v. Riley*, 595 F.3d 1258, 1264 (11th Cir. 2010) (citations omitted) (quotations omitted).

Under Georgia law, any theory of recovery requires a "threshold [showing of] proof that an injured plaintiff was exposed to asbestos-containing products for which the defendant is responsible." *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1481 (11th Cir. 1985) (applying Georgia law) ("Proof of a particular defendant's asbestos-containing products is an essential element of plaintiff's cause of action under Georgia law . . . ."). Furthermore, the plaintiff must submit sufficient evidence to establish proximate causation, another indispensable component of any negligence or products liability action under Georgia law. *Talley v. City Tank Corp.*, 279 S.E.2d 264, 269 (Ga. Ct. App. 1981). In this context, the plaintiff must prove exposure to a "particular defendant's products" in order to satisfy the proximate causation requirement. *Blackston*, 764 F.2d at 1483. This may be done by setting forth "testimony of co-workers who can identify a plaintiff by name as having worked with or around a particular defendant's asbestos-containing products." *Hoffman v. AC&S, Inc.*, 548 S.E.2d 379, 382 (Ga. Ct. App. 2001) ("Hoffman needed to establish that the product or products that allegedly caused her mesothelioma were, in fact, manufactured or supplied by the defendants in this case."). Georgia courts have effectively refused to

8

impose "market-share or industry-wide liability upon asbestos manufacturers." *Id.* (listing cases and policy considerations). For instance, in *Toole v. Georgia Pacific, LLC*, the Court of Appeals of Georgia found no error in the trial court's grant of summary judgment in favor of the defendant because "to survive summary judgment, an asbestos victim must present evidence that he was exposed to a defendant's products." *Toole v. Georgia-Pacific, LLC*, No. A170A2179, 2011 WL 7938847, at *7 (*citing Hoffman*, 548 S.E.2d at 379).[4] Like the case on review, the plaintiff in *Toole* claimed he came in contact with asbestos when replacing tractor parts on his John Deere small utility tractor. *Id.* Although the *Toole* court did not explicitly anchor its holding on the "bare metal defense," the court stated the following in affirming the trial court:

> **There is no evidence that the used tractor parts identified by Toole were the original parts manufactured by Deere & Company or that they contained asbestos. And we know the replacement brakes and gaskets he installed were not Deere & Company parts.** Although [Toole is] entitled to the benefit of all reasonable inferences to be drawn from the evidence, such inferences cannot be based on mere conjecture or possibility or upon evidence which is too uncertain or speculative.

*Id.* (citations omitted) (internal quotations omitted) (emphasis added). *Toole*, therefore, can be read as an implicit endorsement of the bare metal defense

---

[4] The court is cognizant of the fact that *Toole* is an unreported decision and thus not binding on this court.

and is robust persuasive authority underscoring Georgia's disinclination to hold manufacturers liable for products they did not manufacture, supply, or design.

In summary, Georgia law is clear that any claim for negligence or products liability requires a "plaintiff [to] establish that the proximate cause of his injury was a defect which existed at the time [a particular defendant's] product was sold." *Reid v. BMW of North America*, 430 F. Supp. 2d. 1365, 1372 (N.D. Ga. 2006) (applying Georgia law) ("After the sale of the product, if any injuries occur after an alteration or replacement of the product by a third party, then those injuries cannot be the proximate cause of the manufacturer's original design.") (citations omitted). This means that a plaintiff must show exposure to a particular defendant's original product or a replacement product that was manufactured, supplied, or designed by the same defendant; and, the plaintiff must do so by offering more than mere conjecture or speculation. *Toole*, 2011 WL 7938847, at \*7.

Georgia law is also settled in the sense that it forbids assigning industry-wide liability upon asbestos manufacturers. O.C.G.A. § 51-1-11(d) ("Irrespective of privity, a manufacturer shall not be held liable for the manufacture of a product alleged to be defective based on theories of market share or enterprise, or other theories of industry-wide liability."). Such

10

expansive liability, of course, would be at odds with the requirement of showing proximate causation. In fact, the bare metal defense and proximate causation are intertwined insofar as a plaintiff cannot prevail over the former and simultaneously succeed in showing the latter. Put another way, if a plaintiff cannot establish that the asbestos-containing packing and gaskets added post-sale to a defendant's bare metal product were also manufactured by that defendant, the plaintiff fails to show proximate causation and, at the same time, succumbs to a defendant's bare metal defense, which is available because the defendant cannot point to asbestos exposure stemming directly from one of the defendant's products. *See Blackston*, 764 F.2d at 1483. This observation aside, however, it is readily apparent that Georgia law precludes imposing liability on a manufacturer for injuries arising from other companies' products, a policy embraced by many out-of-state authorities. *See, e.g., O'Neil v. Crane Co.*, 53 Cal. 4th 335, 342 (Cal. 2012) (holding that product manufacturer is not liable under any theory for harm caused by a third party's products); *Faddish v. Buffalo Pumps*, 881 F. Supp. 2d 1361, 1372 (S.D. Fla. 2012) (holding that Florida appellate courts would agree that bare metal manufacturers cannot be liable for a third party's asbestos-containing products); *Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488 (6th Cir. 2005) (holding that plaintiff must show that he was exposed to the

11

"defendant's product" before proceeding on a negligent or strict liability theory).

Finally, contrary to the plaintiffs' concerns that the court is improvidently expanding Georgia's recognized "post-sale alteration" and "product misuse" defenses, the court has shown that Georgia law has already impliedly accepted the bare metal defense by requiring plaintiffs to prove proximate causation through evidence showing asbestos exposure from a "particular defendant's products." It cannot therefore be said that this court is paving additional defensive grounds for asbestos manufacturers. Rather, this court makes the reasonable prediction that the Georgia Supreme Court would be disinclined to hold a manufacturer liable for injuries arising from a product it did not manufacture, supply, or design. The bare metal defense therefore is a viable defense available to Crane, as it would be very likely recognized as such by the Georgia Supreme Court.

### 3. Application of the Bare Metal Defense

With the above framework in mind, the court looks to the evidence in this case and makes all factual inferences in light most favorable to the plaintiffs. *Johnson*, 74 F.3d at 1090. Here, there is evidence that asbestos-containing Crane valves were stored and used at Rayonier. The contents of these valves, particularly the gaskets and packing, were frequently replaced

due to normal operating wear and tear. Such replacements, according to the plaintiffs' evidence, released asbestos fibers into the environment, causing a health hazard to workers situated nearby. Copeland's testimony puts the decedent in close proximity to these replacement maintenances. Thus, as observed by the transferee court, "[a] reasonable jury could conclude from this evidence that Decedent was exposed to asbestos-containing dust from component parts (specifically, gaskets) used in connection with Crane Co. valves" [Doc. No. 66 at 11].

However, there is no evidentiary factual basis to support the conclusion that the asbestos-containing replacement parts to which the decedent was allegedly exposed were Crane products. Neither Trull nor Copeland provide testimony that indicates the decedent was in close contact to replacement parts manufactured, supplied, or designed by Crane. *See Hoffman*, 548 S.E.2d at 382. Moreover, while Crane valves were originally packed with hazardous materials, "there is no evidence that the valves (and/or the asbestos-containing component parts therein) to which Decedent would have been exposed on . . . unspecified 'occasions' were new (i.e., original)" [Doc. No. 66 at 11]. The plaintiffs' mere speculation as to the decedent's exposure to Crane's asbestos-containing replacement or original packing is not sufficient to create an inference of fact for consideration on summary judgment.

13

*Hoffman*, 548 S.E.2d at 383. It is possible, and indeed quite likely, that other companies' replacement parts were used to substitute the original Crane gaskets and packing [Doc. No. 79 at 3]. Indeed, it was entirely up to Rayonier whether to replace Crane valves with asbestos-containing packing or non-asbestos-containing material. Rayonier likewise possessed the authority to replace the valves with another Crane product or, alternatively, with a product manufactured by another company. Therefore, because the bare metal defense protects asbestos manufacturers from injuries caused by asbestos products that were subsequently incorporated into their bare metal products—but which they did not manufacture or distribute—and because the record does not sufficiently show that the decedent's asbestos exposure stemmed from a product manufactured by Crane, summary judgment is warranted in favor of Crane "on grounds of insufficient evidence of product identification/causation pertaining to Crane Co. valves" [Doc. No. 66 at 11].

### III.  Conclusion

For these reasons, Crane's re-filed motion for summary judgment [Doc. No. 75] is GRANTED. This order, coupled with the transferee court's order [Doc. No. 66], addresses all outstanding issues in this case. Since Crane Corporation is the last-named defendant, the Clerk is DIRECTED to terminate the case.

**SO ORDERED** this 21st day of November, 2014.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge
